UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES D. HASS,                          No.  2:13-CV-01746 JAM KJN

        Plaintiff,

    v.                                  **ORDER GRANTING DEFENDANT
                                        SACRAMENTO COUNTY'S MOTION TO
SACRAMENTO COUNTY SHERIFF'S             DISMISS**
DEPARTMENT, ATTORNEY SEAN
GJERDE, AND DOES 1 through X,
inclusive,

        Defendants.

    This matter is before the Court on Defendant Sacramento
County's ("Defendant" or "Defendant County") Motion to Dismiss
(Doc. #20) Plaintiff James Hass' ("Plaintiff") First Amended
Complaint ("FAC") (Doc. #18) for failure to state a claim
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  Plaintiff opposed the motion (Doc. #24) and Defendant
replied (Doc. #26).[1]  For the following reasons, Defendant's
motion is GRANTED.

    I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

    On December 8, 2010, Plaintiff was arraigned on charges of

---

[1] This motion was determined to be suitable for decision without
oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
scheduled for March 19, 2014.

1

contempt of court for violation of a court order to pay child support. FAC ¶ 10. Plaintiff was ordered to appear in Sacramento County Superior Court on February 7, 2011 for trial on the contempt matter. FAC ¶ 11. On February 7, 2011, Plaintiff failed to appear in court. FAC ¶ 12. As a result of Plaintiff's non-appearance, the court ordered that Plaintiff be incarcerated in the Sacramento County Jail for 55 days. FAC, Ex. 2. On February 8, 2011, Plaintiff appeared in Sacramento County Superior Court, under the mistaken belief that trial was set for that date. FAC ¶¶ 16-17. Plaintiff was taken into custody, and remained in custody until March 5, 2011. FAC ¶¶ 18, 21.

Plaintiff alleges that "Defendant County was not authorized by the Sacramento County Superior Court to arrest, detain or incarcerate Plaintiff." FAC ¶ 23. Plaintiff further alleges that "the Clerk's minutes of the proceedings on February 7, 2011 did not constitute a final order or judgment in the matter," and the Sacramento County Court did not execute and file a "Warrant of Commitment" until March 4, 2011. FAC ¶¶ 15, 24.

On his first day in custody, Plaintiff was interviewed by a "medical staff person" to determine his health needs while in Sacramento County Jail. FAC ¶ 41. Plaintiff alleges that he disclosed the following medical conditions: high blood pressure, acute sleep apnea, diabetes, and "diminished strength due to a major stroke." FAC ¶ 42. While incarcerated, Plaintiff claims he was originally provided with medication for his high blood pressure, but "at some point during his incarceration, Defendant County ceased providing" the medication. FAC ¶ 45. While in

2

1  custody, Plaintiff alleges he was not provided with any other
2  medication, nor was he permitted to use a CPAP machine for his
3  sleep apnea.  FAC ¶¶ 46, 49.  Plaintiff was allegedly "not
4  allowed a single shower for 6 days," was held in a cell with "no
5  windows and . . . bags of old food/garbage," and was not
6  permitted "to exercise on a regular basis or to have time out of
7  his cell."  FAC ¶¶ 47-48, 51.  While incarcerated, Plaintiff
8  alleges he was not brought in front of a judicial magistrate to
9  challenge the legality of his confinement.  FAC ¶¶ 32, 38-39.

10     Plaintiff also alleges that Defendant "has a policy of
11  segregating those incarcerated pursuant to a civil matter from
12  those in criminal matters."  FAC ¶ 64.  Plaintiff further alleges
13  that, "as a proximate result of this policy," he suffered
14  constitutional injuries in violation of the Fourth and Eighth
15  Amendments.  FAC ¶ 68.

16     Plaintiff was represented by Sean Gjerde ("Defendant
17  Gjerde") in the above-mentioned family court matter.  FAC ¶ 71.
18  Defendant Gjerde's representation of Plaintiff is the subject
19  matter of Plaintiff's fourth through eighth causes of action.
20  However, as Defendant County's Motion to Dismiss only addresses
21  Plaintiff's first through third causes of action, the facts of
22  Defendant Gjerde's representation are not relevant and are not
23  summarized here.

24     On December 19, 2013, this Court granted Defendant County's
25  Motion to Dismiss with leave to amend. (Doc. #16) On January 8,
26  2014, Plaintiff filed the FAC (Doc. #18) in this Court.
27  Plaintiff's FAC includes the following causes of action against
28  the Defendant County: (1) False Imprisonment; (2) Negligence; and

1    (3) "Violation of Civil Rights".  This Court has original

2    jurisdiction under 28 U.S.C. § 1331 because Plaintiff has

3    asserted a claim for relief under 42 U.S.C. § 1983 for violation

4    of his federal civil rights.

5

6                        II.   OPINION

7        A.   First Cause of Action—False Imprisonment

8        Defendant argues that Plaintiff's first cause of action for

9    false imprisonment is barred by California Penal Code ("CPC")

10   section 847(b).  Mot. at 4.  Defendant notes that CPC section

11   847(b)(1) "precludes civil liability for false imprisonment

12   against a peace officer for an act within the scope of his or her

13   authority arising out of a lawful arrest, or an arrest that the

14   officer had reasonable cause to believe was lawful."  Mot. at 4.

15   Plaintiff does not directly respond to this argument, but argues,

16   generally, that's "Defendant's assertion of immunity is an

17   affirmative defense" and that "motions to dismiss . . . do not

18   typically and/or necessarily embrace litigation of affirmative

19   defenses."  Opp. at 1-2.

20       As an initial matter, immunity defenses are properly raised

21   in a motion to dismiss.  See, e.g., Mullis v. U.S. Bankr. Court

22   for Dist. of Nevada, 828 F.2d 1385, 1387 n. 6 (9th Cir. 1987).

23   Plaintiff cites no case law in support of his position that the

24   issue of immunity has been raised prematurely.  Opp. at 1-2.  The

25   Supreme Court has "stressed the importance of resolving immunity

26   questions at the earliest possible stage of litigation."  Hunter

27   v. Bryant, 502 U.S. 224, 227 (1991).  Accordingly, if the FAC

28   does not "plausibly suggest an entitlement to relief," it would

                                4

be "unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Under the California Government Code, Defendant County is generally liable for the actions of its employees under the theory of respondeat superior. Cal. Gov't. Code § 815.2. Therefore, to state a cause of action against Defendant, Plaintiff must plead facts that, if true, would expose a County employee to civil liability for false imprisonment. However, CPC section 847(b) provides that "[t]here shall be no civil liability on the part of . . . any peace officer . . ., acting within the scope of his or her authority, for . . . false imprisonment arising out of any arrest" if "[t]he arrest was lawful or the peace officer, at the time of the arrest, had reasonable cause to believe that the arrest was lawful." CPC § 847(b). Similarly, a jailer cannot be held liable for false imprisonment unless "he knew or should have known of the illegality of the imprisonment." Sullivan v. Cnty. of Los Angeles, 12 Cal.3d 710, 717-18 (1974). Accordingly, Defendant is immune from civil liability for falsely imprisoning Plaintiff unless one of its employees lacked reasonable cause to believe that Plaintiff's arrest was lawful, or knew or should have known that Plaintiff's imprisonment was illegal.

On February 7, 2011, Plaintiff failed to appear at his scheduled court appearance and Commissioner Danny Haukedalen sentenced Plaintiff to 55 days in jail for his failure to appear. FAC ¶¶ 12, 14. On February 8, 2011, a Deputy County Sheriff arrested Plaintiff and took him into custody. FAC ¶ 18. The

1   Commissioner's February 7, 2011 order, as well as the Clerk's

2   minutes reflecting that order (FAC, Ex. 2), provided the

3   arresting officer with "reasonable cause to believe that the

4   arrest was lawful."  CPC § 847(b).  Moreover, the County employee

5   who subsequently served as Plaintiff's "jailer" did not know or

6   have reason to know that Plaintiff's imprisonment was illegal.

7   The fact that the Warrant of Commitment was not issued and signed

8   until March 4, 2011 is immaterial: both the arresting officer and

9   the jailer could reasonably rely on the Clerk's minutes to

10  reflect the Commissioner's order that Plaintiff be committed for

11  55 days.  FAC, Ex. 2.  Accordingly, Defendant County may not be

12  held liable for false imprisonment of Plaintiff.  CPC § 847(b).

13       Plaintiff's argument that Defendant is not immune from suit

14  under the Eleventh Amendment is misplaced.  Opp. at 2-3.

15  Defendant claims statutory immunity, under CPC section 847(b)(1),

16  rather than constitutional immunity under the Eleventh Amendment.

17  Reply at 2.  Indeed, Eleventh Amendment immunity does not extend

18  to municipalities or political subdivisions of a state, such as

19  Defendant County.  Mt. Healthy City Sch. Dist. Bd. of Educ. v.

20  Doyle, 429 U.S. 274, 280 (1977).  Therefore, Plaintiff's Eleventh

21  Amendment arguments are non-responsive to Defendant's claim of

22  statutory immunity.

23       For the foregoing reasons, Plaintiff's first cause of action

24  for false imprisonment is DISMISSED WITHOUT LEAVE TO AMEND.  As

25  Defendant is entitled to statutory immunity under CPC section

26  847(b), any attempts to amend the first cause of action would be

27  futile.  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048,

28  1052 (9th Cir. 2003).

1      B.    Second Cause of Action--Negligence

2          Defendant argues that Plaintiff's second cause of action for

3      negligence is barred by several sections of the California

4      Government Code ("CGC").  Mot. at 5.  Specifically, Defendant

5      argues that the CGC immunizes a public entity from liability

6      stemming from (1) "an injury to any prisoner," (2) interference

7      with a prisoner's right to obtain a judicial determination or

8      review of the legality of his confinement, and (3) failure to

9      furnish or obtain medical care for a prisoner.  Mot. at 5-6

10     (citing CGC § 844.6(a)(2)).  Plaintiff does not directly address

11     the issue of statutory immunity in his opposition brief.

12         Plaintiff alleges two distinct forms of harm in his

13     negligence claim.  FAC ¶ 33-61.  First, Plaintiff alleges that

14     Defendant "was ignorant of material facts about his incarceration

15     that would have provided him an opportunity" to obtain a judicial

16     determination as to the legality of his confinement.  FAC ¶ 39.

17     Second, Plaintiff alleges that Defendant failed to provide

18     appropriate medical care despite its knowledge that Plaintiff

19     suffered from high blood pressure, acute sleep apnea, diabetes,

20     and "diminished strength due to a major stroke he suffered in

21     early 2009."  FAC ¶ 40-49.

22         Defendant cannot be held liable for "interfering with the

23     right of a prisoner to obtain a judicial determination or review

24     of the legality of his confinement," unless such interference was

25     "intentional and unjustifiable."  CGC § 845.4.  Plaintiff has not

26     alleged that Defendant's failure to bring him in front of a judge

27     was an "intentional" interference with that right.  Furthermore,

28     based on the Clerk's minutes of the February 7, 2011 proceeding,

7

it cannot be said that Defendant's failure to provide Plaintiff
with an opportunity to further challenge his confinement was
"unjustifiable."  Relying on the Clerk's minutes, Defendant was
justified in concluding that Plaintiff had been sentenced to 55
days of confinement, and that no further judicial hearing was
necessary.  Accordingly, Defendant is statutorily immune from
liability for interfering with Plaintiff's right to a judicial
review of the legality of his confinement.

Moreover, Defendant cannot be held liable for an injury
caused by the failure of a County employee to "furnish or obtain
medical care for a prisoner in his custody," unless the prisoner
is "in need of immediate medical care" and the employee "fails to
take reasonable action to summon such medical care."
CGC § 845.6.  Although Plaintiff alleges that County employees
were aware of his medical conditions, he does not allege that he
was "in need of immediate medical care," within the meaning of
the statute.  Cf., Jett v. Penner, 439 F.3d 1091, 1099 (9th Cir.
2006) (finding that an inmate with a fractured thumb required
immediate medical care to set and cast the fracture).

Furthermore, even if these conditions did require immediate
medical care, Plaintiff does not allege that Defendant County
failed to summon such care.  Castaneda v. Dep't of Corr. &
Rehab., 212 Cal.App.4th 1051, 1074 (2013) (distinguishing between
the failure to summon medical care and negligence by those
providing medical care, the latter of which the State may not be
held liable for, under section 845.6).  Plaintiff had contact
with a "medical staff person" upon booking into the Sacramento
County Jail.  FAC ¶ 41.  Plaintiff was originally provided with

8

1  his medication for high blood pressure, but "at some point during

2  his incarceration," this medication ceased; Plaintiff was never

3  provided with medication or treatment for diabetes or sleep

4  apnea.  FAC ¶¶ 43-49.  California state courts have held that,

5  "as a matter of statutory interpretation, . . . the act of a

6  doctor *or other such professional* who, in the course of treatment

7  of a prisoner, fails to prescribe and/or provide the correct

8  medication is [not] the legal equivalent to a failure to summon

9  medical care" under § 845.6.  Nelson v. State of California, 139

10 Cal.App.3d 72, 80-81 (1982) (emphasis added).  Defendant's

11 alleged failure to provide medication to Plaintiff does not

12 expose Defendant to liability under CGC section 845.6.

13      As CGC sections 844.6(a)(2), 845.4, and 845.6 preclude

14 Defendant's liability for injuries to Plaintiff resulting from

15 the negligence of Defendant or Defendant's employees, Plaintiff

16 has failed to state a claim for relief in his second cause of

17 action.  Accordingly, Plaintiff's second cause of action is

18 DISMISSED WITHOUT LEAVE TO AMEND.  As Defendant is entitled to

19 statutory immunity under the California Government Code, any

20 attempts to amend the second cause of action would be futile.

21 Eminence Capital, 316 F.3d at 1052.

22

23      C.   Third Cause of Action—Civil Rights Claims

24      In his third cause of action, Plaintiff alleges a "violation

25 of [his] civil rights."  Although Plaintiff does not expressly

26 invoke a statute, it can be inferred that Plaintiff's claim is

27 brought pursuant to 42 U.S.C. § 1983.  As Plaintiff has sued

28 Defendant County, his civil rights claim takes the form of a

9

1 § 1983 <u>Monell</u> claim.   <u>Monell v. Dep't of Soc. Servs. of City of</u>
2 <u>New York</u>, 436 U.S. 658, 691 (1978).   To the extent that
3 Plaintiff's first and second causes of action purport to state
4 constitutional (rather than common law) claims, the analysis is
5 identical to that set forth below.

6    Defendant argues that Plaintiff's third cause of action must
7 be dismissed for failure to state a claim.   Mot. at 7.
8 Specifically, Defendant argues that Plaintiff has failed to
9 allege a policy or custom that was the cause of any
10 constitutional violations.   Mot. at 7.   Plaintiff responds that
11 the "de facto policies and customs of incarceration in
12 California" violated his rights under the Fourth, Eighth, and
13 Fourteenth Amendments.   Opp. at 19.   Plaintiff also alleges that
14 Defendant's policy of "segregating those incarcerated pursuant to
15 a civil matter from those in criminal matters" resulted in the
16 constitutional violations.   FAC ¶ 64.

17    Although a municipality can be sued under § 1983, "it cannot
18 be held liable unless a municipal policy or custom caused the
19 constitutional injury."   <u>Leatherman v. Tarrant Cnty. Narcotics</u>
20 <u>Intelligence & Coordination Unit</u>, 507 U.S. 163, 166 (1993).
21 Furthermore, the complaint must allege the policy, as well as its
22 causal relationship to the constitutional injury, in sufficient
23 detail.   General or conclusory allegations will not suffice.
24 <u>See, e.g.</u>, <u>Estate of Brooks ex rel. Brooks v. United States</u>, 197
25 F.3d 1245, 1247 (9th Cir. 1999) (approving the dismissal of a
26 <u>Monell</u> claim, on the grounds that "the complaint did not allege a
27 deliberate County policy with sufficient particularity").

28    The only policy expressly alleged in the FAC is the County's

1  "policy of segregating those incarcerated pursuant to a civil

2  matter from those in criminal matters."  FAC ¶ 64.  This policy

3  is also described as "discriminating between an inmate being

4  housed in the county jail pursuant to a civil matter rather than

5  a criminal matter."  FAC ¶ 63.  Plaintiff further alleges that,

6  "[a]s a proximate result of this policy," he suffered various

7  constitutional harms.  FAC ¶ 66-68.  However, in his opposition

8  brief, Plaintiff largely ignores this policy and does not explain

9  the causal nexus between the policy and the constitutional harms

10  alleged.  Opp. at 9-10.  Moreover, there is no self-evident

11  causal relationship between a policy of separating individuals

12  incarcerated in criminal and civil matters, and allegedly

13  inhumane prison conditions.  Plaintiff's mere conclusory

14  allegation of a causal relationship between the policy and his

15  constitutional injuries is insufficient to withstand Defendant's

16  motion to dismiss.  See Estate of Brooks, 197 F.3d at 1247

17  (elements of a Monell claim must be alleged with "sufficient

18  particularity").

19      Plaintiff's argument that his incarceration violated the

20  Fourth and Fourteenth Amendments is unpersuasive.  Opp. at 4-9.

21  This argument focuses on Plaintiff's allegations that the

22  "Warrant of Commitment" did not issue until March 4, 2011, and

23  that Plaintiff was never brought before a judicial magistrate

24  after his confinement began.  Opp. at 4-9.  However, even

25  assuming that these circumstances were improper, Plaintiff simply

26  does not allege or argue that a County policy was the driving

27  force behind these events.  In lieu of citing the correct Monell

28  standard, Plaintiff erroneously cites the standards for the good-

11

1  faith exception to the exclusionary rule and qualified immunity
2  for *individual* government officials.  Opp. at 7-8 (citing <u>United</u>
3  <u>States v. Leon</u>, 468 U.S. 897 (1984) and <u>Anderson v. Creighton</u>,
4  483 U.S. 635 (1987)).  Moreover, Plaintiff's reliance on <u>Oviatt</u>
5  is misplaced.  <u>Oviatt By & Through Waugh v. Pearce</u>, 954 F.2d 1470
6  (9th Cir. 1992).  In <u>Oviatt</u>, the Ninth Circuit determined that a
7  policy of inaction and deliberate indifference existed, where the
8  County failed to take remedial action despite the fact that the
9  Sheriff "knew of at least 19 incidents . . . in which individuals
10 sat in jail for periods of undetermined length after they missed
11 arraignment." <u>Oviatt</u>, 954 F.2d at 1478.  The case at bar is
12 markedly different, as there is no allegation that a policy-
13 making County employee had knowledge of a similar pattern of
14 incidents.

15     Likewise, Plaintiff's argument that Defendant violated his
16 Eighth Amendment rights is unavailing.  Opp. at 9-17.  Plaintiff
17 cites a number of cases in which prison conditions were found to
18 violate the Eighth Amendment, and attempts to draw parallels to
19 the conditions he allegedly endured in the present case.  Opp. at
20 14-17.  However, he fails to allege that a County policy caused
21 these conditions or that a County employee at the policy-making
22 level had actual or constructive knowledge of these conditions.
23 Without doing so, Plaintiff cannot maintain a <u>Monell</u> claim based
24 on a policy of inaction or deliberate indifference.  <u>Oviatt</u>, 954
25 F.2d at 1477.  Plaintiff relies heavily on <u>Brown v. Plata</u>, in
26 which the U.S. Supreme Court examined various Eighth Amendment
27 violations in the California state prison system.  <u>Brown v.</u>
28 <u>Plata</u>, 131 S.Ct. 1910 (2011).  However, Plaintiff fails to draw a

1  connection between the conditions described in Plata, and those

2  encountered by him while incarcerated in the entirely separate

3  prison system run by Defendant County.  Plaintiff's conclusion

4  that the Plata ruling on state prison conditions placed Defendant

5  on "constructive notice" of the alleged violations in Sacramento

6  County Jail does not follow.  Opp. at 13.  Moreover, Plaintiff's

7  contention that the "denial of medical care and deprivation of

8  exercise and basic necessities" are the "de facto policies and

9  customs of incarceration in California" is unsupported by the

10 FAC.  Opp. at 19.  To find that an isolated instance of alleged

11 mistreatment suggests "a practice so permanent and well settled

12 as to constitute a 'custom or usage' with the force of law,"

13 would eviscerate the requirements of Monell altogether.  Monell,

14 436 U.S. at 691.  Plaintiff's citation to pre-Twombly case law is

15 unhelpful in this regard, given the heightened pleading

16 requirements that have subsequently developed.  Opp. at 20

17 (citing Atchinson v. D.C., 73 F.3d 418 (D.C. Cir. 1996) and

18 Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination

19 Unit, 507 U.S. 163 (1993)).

20     Finally, Plaintiff's argument that Defendant violated his

21 procedural and substantive due process rights is unconvincing.

22 Opp. at 9, 17-18.  The only legal authority cited by Plaintiff in

23 support of this argument is a case involving § 1983 liability of

24 an individual government official.  Cnty. of Sacramento v. Lewis,

25 523 U.S. 833 (1998).  Indeed, in Lewis, the Court expressly

26 acknowledged that "the issue of municipal liability is not before

27 us."  Lewis, 523 U.S. at 838 n. 2.  As with Plaintiff's other

28 arguments, it ultimately fails because Plaintiff fails to connect

the alleged constitutional violations to an official County
policy.  <u>Monell</u>, 436 U.S. at 691. Accordingly, Plaintiff's third
cause of action is DISMISSED WITH LEAVE TO AMEND.

                            III.   ORDER

     For the foregoing reasons, Defendant's Motion to Dismiss is
GRANTED.  Defendant's Motion to Dismiss Plaintiff's first and
second causes of action is GRANTED WITHOUT LEAVE TO AMEND.
Defendant's Motion to Dismiss Plaintiff's third cause of action
is GRANTED WITH LEAVE TO AMEND.  Plaintiff's Second Amended
Complaint must be filed within twenty (20) days from the date of
this order.  Defendant's responsive pleading is due within twenty
(20) days thereafter.  If Plaintiff elects not to file a Second
Amended Complaint, the case will proceed without the Defendant
County on the remaining causes of action.

     IT IS SO ORDERED.

Dated:  April 17, 2014

                                   _____
                                   JOHN A. MENDEZ,
                                   UNITED STATES DISTRICT JUDGE

                               14