UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES D. HASS,                          No.  2:13-cv-01746 JAM KJN

        Plaintiff,

    v.                                  **ORDER GRANTING DEFENDANT
                                        COUNTY'S MOTION TO DISMISS**

COUNTY OF SACRAMENTO
DEPARTMENT OF SUPPORT
SERVICES, SACRAMENTO COUNTY
SHERIFF SCOTT JONES, ATTORNEY
SEAN GJERGE, and DOES 1
through X, inclusive,

        Defendants.

    This matter is before the Court on Defendant Sacramento County's ("Defendant") Motion to Dismiss (Doc. #44) the first cause of action in Plaintiff James Hass' ("Plaintiff") Third Amended Complaint ("TAC") (Doc. #42).  Plaintiff opposes the motion (Doc. #49) and Defendant filed a reply (Doc. #51).  For the following reasons, Defendant's motion is GRANTED. [1]

    I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

    From February 8, 2011 to March 5, 2011, Plaintiff was

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for January 14, 2015.

1

1   incarcerated in the Sacramento County Jail.  TAC ¶ 9.  Plaintiff

2   alleges that "Defendant County deprived Plaintiff of a humane

3   environment" during his incarceration.  TAC ¶ 34.  Specifically,

4   Plaintiff alleges that he was kept in a windowless cell along

5   with "large bags of kitchen garbage," and was not provided time

6   to exercise, shower, or "access news."  TAC ¶ 22.

7        Plaintiff also alleges that, on his first day in custody, he

8   "went through the routine intake processing" at the jail, which

9   included "an interview with a person from the medical staff or

10  employee designated by Defendant County to obtain the medical

11  information from Plaintiff."  TAC ¶¶ 37-38.  During this

12  interview, Plaintiff disclosed a number of medical conditions

13  including hypertension, acute sleep apnea, diabetes, and a

14  history of strokes.  TAC ¶ 39.  Plaintiff was originally provided

15  with blood pressure medication but, at some point during his

16  incarceration, "Defendant County withdrew all medications from

17  Plaintiff and deprived Plaintiff of access to a [sleep apnea]

18  CPAP machine."  TAC ¶¶ 45, 46.  Plaintiff alleges that, "as a

19  proximate result of Defendant's deprivation to Plaintiff of his

20  legally prescribed medications and medical equipment," Plaintiff

21  "became fearful for his life," became "demoralized," suffered

22  "emotional distress, humiliation, depression and a decline in his

23  physical health."  TAC ¶¶ 58, 59.  Plaintiff also alleges that he

24  subsequently "became alienated from his wife and the marriage has

25  not been restored."  TAC ¶ 64.

26       Plaintiff was represented by Sean Gjerde ("Defendant

27  Gjerde") in the family court matter which gave rise to his civil

28  confinement.  SAC ¶ 4.  Defendant Gjerde's representation of

2

1   Plaintiff is the subject matter of Plaintiff's second through

2   sixth causes of action.  However, as Defendant County's motion to

3   dismiss only addresses Plaintiff's first cause of action, the

4   facts of Defendant Gjerde's representation are not relevant to

5   its motion and are not summarized here.

6        On March 7, 2012, Plaintiff filed the initial complaint in

7   Sacramento County Superior Court.  On August 22, 2013, Defendants

8   removed the matter to this Court.  On August 29, 2013, Defendant

9   County filed a motion to dismiss the initial complaint.  On

10  December 20, 2013, the Court granted Defendant County's motion to

11  dismiss, but gave Plaintiff leave to amend his civil rights claim

12  against the County.  On January 8, 2014, Plaintiff filed his

13  First Amended Complaint ("FAC").  On January 27, 2014, Defendant

14  County filed a motion to dismiss Plaintiff's FAC.  On April 18,

15  2014, the Court granted Defendant County's motion to dismiss,

16  again giving Plaintiff leave to amend his civil rights claim.  On

17  May 7, 2014, Plaintiff filed his Second Amended Complaint

18  ("SAC").  On May 27, 2014, Defendant County filed a motion to

19  dismiss Plaintiff's SAC.  On October 8, 2014, the Court granted

20  Defendant County's motion to dismiss, again with leave to amend.

21       On October 27, 2014, Plaintiff filed his Third Amended

22  Complaint.  The TAC includes the following causes of action:

23  (1) "Violation of Civil Rights – Defendant County;"

24  (2) Malpractice in the family law matter; (3) Malpractice for

25  failure to keep client advised; (4) Malpractice for loss of

26  $70,000 from Home Depot; (5) Malpractice for loss of business,

27  personal assets and home; and (6) "Fraud and Deceit/False

28  Promise."

3

1

II.   OPINION

2      Plaintiff's only claim against Defendant County alleges a

3  "violation of [his] civil rights."  TAC at 3.  As in his previous

4  complaints, Plaintiff does not expressly invoke a statute, but it

5  can be inferred that his claim is brought pursuant to 42 U.S.C.

6  § 1983.  As Plaintiff has sued Defendant County, his civil rights

7  claim takes the form of a § 1983 Monell claim.  Monell v. Dep't

8  of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).

9      Although a municipality can be sued under § 1983, "it cannot

10 be held liable unless a municipal policy or custom caused the

11 constitutional injury."  Leatherman v. Tarrant Cnty. Narcotics

12 Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993).

13 Accordingly, to state a claim for municipal liability under

14 § 1983, a plaintiff must allege (1) that an official policy or

15 custom existed; (2) that the plaintiff suffered constitutional

16 injury; and (3) the existence of a causal link between the

17 policy/custom and the plaintiff's injury.  Id.  Moreover, each of

18 these elements must be alleged with "sufficient particularity"

19 and general or conclusory allegations will not suffice.  See,

20 e.g., Estate of Brooks ex rel. Brooks v. United States, 197 F.3d

21 1245, 1247 (9th Cir. 1999) (approving the dismissal of a Monell

22 claim, on the grounds that "the complaint did not allege a

23 deliberate County policy with sufficient particularity").

24     Plaintiff argues that his civil rights were violated

25 because, "[d]uring his incarceration for 26 days in the

26 Sacramento County Main Jail, he was denied prescription

27 medications for high blood pressure and diabetes as well as his

28 medical equipment for acute sleep apnea."  Opp. at 2.  Plaintiff

4

1   argues that Defendant County should be held liable for this

2   deprivation because it had an official policy of "provid[ing] a

3   safe and humane environment" for inmates, and "the deficiencies

4   in the execution of the policy stem from a lack of training

5   and/or a lack of supervision."  Opp. at 5-6.  Relatedly,

6   Plaintiff argues that Defendant County was deliberately

7   indifferent to the violation of Plaintiff's civil rights.  Opp.

8   at 13.

9       Plaintiff's continued reliance on the Mission and Goals

10  Statement published by Defendant County demonstrates a

11  fundamental misunderstanding of the <u>Monell</u> requirements.  As the

12  Court wrote in its October 8, 2014 order:

13          [T]o the extent that Plaintiff's <u>Monell</u> claim is based
            on the *failure to follow* Defendant County's statement
14          of "Mission and Goals," the causal link is missing: it
            cannot be said that an official policy is the "moving
15          force" behind an injury caused by a violation of that
            policy.  Order at 6 (citing <u>Monell</u>, 436 U.S. at 694)
16          (emphasis in original).

17  Plaintiff has provided no authority or reasons for the Court to

18  reconsider this conclusion.  Accordingly, Plaintiff cannot rely

19  on Defendant County's Missions and Goals Statement as an official

20  policy, for purposes of his <u>Monell</u> claim.

21      As Plaintiff has not alleged that an official County policy

22  caused the violations, his <u>Monell</u> claim rests entirely on his

23  allegations that Defendant County failed to adequately train its

24  employees in providing medical care to inmates.  The Supreme

25  Court has held that a municipality's failure to train its

26  employees may create § 1983 liability where the "failure to train

27  amounts to deliberate indifference to the rights of persons with

28  whom the [employees] come into contact."  <u>City of Canton, Ohio v.</u>

5

1    Harris, 489 U.S. 378, 388 (1989).  The Court further explained

2    that, to establish a municipality's deliberate indifference, a

3    Plaintiff must show that "the need for more or different training

4    is so obvious, and the inadequacy so likely to result in the

5    violation of constitutional rights, that the policymakers of the

6    city can reasonably be said to have been deliberately indifferent

7    to the need."  City of Canton, 489 U.S. at 390.  Subsequently,

8    the Supreme Court noted that "[a] municipality's culpability for

9    a deprivation of rights is at its most tenuous where a claim

10   turns on a failure to train."  Connick v. Thompson, 131 S.Ct.

11   1350, 1359 (2011).  Moreover, "adequately trained officers

12   occasionally make mistakes; the fact that they do says little

13   about the training program or the legal basis for holding the

14   [municipality] liable."  City of Canton, 489 U.S. at 391.

15        Plaintiff makes the following allegations, which directly

16   relate to his "failure to train" theory: "Defendant County failed

17   to adequately train and/or supervise its agents and/or employees

18   with respect to providing currently prescribed medications to

19   inmates" (TAC ¶ 54); "Defendant County demonstrated 'deliberate

20   indifference' to the welfare and health of Plaintiff" (TAC ¶ 55);

21   and "Defendant [County] failed to either supervise and/or train

22   staff at the Main Jail regarding identification [of] these

23   [suicide] risk factors and/or the procedures to follow to reduce

24   Plaintiff's distress and/or prevent injury or death" (TAC ¶ 32).

25   These allegations are precisely the type of "threadbare recitals

26   of the elements of a cause of action" that the Supreme Court has

27   cautioned will not withstand a motion to dismiss.  Ashcroft v.

28   Iqbal, 556 U.S. 662, 678 (2009).  The above statements are

6

unsupported by any specific factual allegations, regarding the

details of Defendant County's alleged training program, precisely

how that training program was deficient, or how such a deficiency

caused Plaintiff's injuries.  In the absence of more specific

allegations, Plaintiff's "failure to train" theory of municipal

liability cannot survive Defendant County's motion to dismiss.

Plaintiff also fails to identify any individuals at a

policymaking level with Defendant County who acted with

"deliberate indifference" to Plaintiff's medical needs.  As noted

above, a finding of deliberate indifference by a municipality is

only appropriate where "the need for more or different training

is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that the policymakers of the

city can reasonably be said to have been deliberately indifferent

to the need."  City of Canton, 489 U.S. at 390.  Thus, the

relevant actions (or lack thereof) are those taken by individuals

*at the policymaking level*.  At no point does Plaintiff allege

that policymakers were aware of his medical condition and failed

to provide proper care.  Plaintiff generally alleges that

"Defendant County withdrew all medications from Plaintiff" and

that "Defendant County had actual knowledge of Plaintiff's

medical needs and conditions at the time that he was processed

into the Main Jail."  TAC ¶¶ 42, 46.  Plaintiff does not allege

that an individual at the policymaking level was personally

responsible for inmate intake or dispensation of medication, nor

would such an allegation be credible.  Rather these allegations

appear to refer to the actions of individual non-policymaking

employees of Defendant County.  Such actions are not relevant in

1  determining municipal liability.

2       For precisely the same reason, Plaintiff's argument that his

3  medical needs were obvious to Defendant County is misplaced.

4  Opp. at 9.   Whether Plaintiff's medical needs were obvious to

5  non-policymaking individuals at the County Jail is irrelevant.

6  Rather, Plaintiff needs to have alleged that Defendant County's

7  policymakers were aware that their training program was

8  deficient, and that these policymakers made a "conscious or

9  deliberate" choice to ignore that deficiency.  Rimac v. Duncan,

10  319 F. App'x 535, 538 (9th Cir. 2009).   As discussed above,

11  Plaintiff has not sufficiently alleged such conduct.

12       Similarly, Plaintiff's argument as to the "risk factors for

13  suicide" identified by then-Jail Commander Scott Jones fails.

14  TAC ¶ 18.   Plaintiff alleges that "Defendant took no actions to

15  reduce Plaintiff's distress or exposure to Defendant's identified

16  risk factors for suicide," primarily solitary confinement for a

17  first-time inmate.  TAC ¶ 31.   Again, in the absence of a

18  sufficiently alleged policy or custom of placing first-time

19  inmates in solitary confinement, such actions can only be

20  attributed to individual, non-policymaking employees of Defendant

21  County.   These actions are not relevant in determining municipal

22  liability.

23       To the extent that Plaintiff attempts to argue that

24  Defendant County had developed an unofficial custom of failure to

25  properly provide medications to inmates, his allegations are

26  insufficient to establish such a custom.   Plaintiff's sole

27  allegation in this regard is that "[b]etween 2007 and 2013, at

28  least 12 inmates in the custody of Defendant died as a result of

1    medical issues that arose while the inmate was in custody."  TAC

2    ¶ 36.  This statement is unaccompanied by any further allegations

3    as to the details of these 12 deaths.  The fact that these deaths

4    occurred "as a result of medical issues that arose while the

5    inmate was in custody" does not necessarily mean that such deaths

6    resulted from improper care or failure to provide medication.

7    Without more, this barebones allegation is insufficient to

8    establish an unofficial County custom.

9          Finally, as to Plaintiff's continued reliance on the Supreme

10   Court's recent ruling in Brown v. Plata, the Court refers to the

11   finding made in its April 18, 2014 Order:

12          Plaintiff relies heavily on Brown v. Plata, in which
            the U.S. Supreme Court examined various Eighth
13          Amendment violations in the California state prison
            system. However, Plaintiff fails to draw a connection
14          between the conditions described in Plata, and those
            encountered by him while incarcerated in the entirely
15          separate prison system run by Defendant County.
            Plaintiff's conclusion that the Plata ruling on state
16          prison conditions placed Defendant on "constructive
            notice" of the alleged violations in Sacramento County
17          Jail does not follow."  Order at 12-13 (citations
            omitted).
18

19   Plaintiff has presented no authority or reasons for the Court to

20   reconsider this finding.

21         Dismissal without leave to amend is appropriate only where

22   it is "clear . . . that the complaint could not be saved by

23   amendment."  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d

24   1048, 1052 (9th Cir. 2003).  The Court has granted Plaintiff

25   leave to amend his complaint three times, and each time Plaintiff

26   has been unable to successfully do so.  Moreover, in opposing

27   each of Defendant County's repeated motions to dismiss, Plaintiff

28   has continued to make arguments that have been consistently

9

1   rejected by the Court.  See supra at 4-5, 8-9.  The Court

2   concludes that allowing Plaintiff leave to file a fifth complaint

3   would be inappropriate, as amendment would be futile.

4   Defendant's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

5                              III.   ORDER

6        For the reasons set forth above, the Court GRANTS WITHOUT

7   LEAVE TO AMEND Defendant County's Motion to Dismiss Plaintiff's

8   first cause of action.  As Plaintiff's sole cause of action

9   against Defendant County is dismissed without leave to amend, the

10  matter will proceed without Defendant County.

11       IT IS SO ORDERED.

12  Dated: January 22, 2015

13

14                                           JOHN A. MENDEZ,
                                             UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28